Please proceed then. We'll call this case New Jersey Coalition of Automotive Retailers v. Mazda Motor of America. Mr. Kluska, please proceed. Good morning, Your Honors, and may it please the Court. Dan Kluska from Wilentz, Goldman & Spitzer on behalf of Plaintiff Appellant, the New Jersey Coalition of Automotive Retailers. Dan, as I understand the split you've got, you're taking ten minutes and then it's ceding five minutes to the AMECAS, the National Automotive Dealers Association, is that right? That's correct, Your Honor. Okay, so we'll set the clock for seven minutes here then since you're reserving three. Please go ahead. Thank you, and I'd like to briefly state at the outset that I hope, Your Honors, the Court, staff, and counsel are all staying well during these extraordinary times. Thank you. Likewise. Your Honor, since the days that only one out of every thirteen families owned a car, and the most popular car driven was a Model T Ford, the New Jersey Coalition of Automotive Retailers has been advocating on behalf of the interests of new motor vehicle dealers in the state of New Jersey. Mr. Kluska, let me ask you something. Mr. Kluska, let me ask you. This is Judge Estrepo. Should we take a narrow or a wide reading of this complaint? In other words, it looks like the District Court interpreted it with respect to just the Mazda retailers. Should we interpret it consistent with just the Mazda retailers or all new car dealers in New Jersey? No, Your Honor. The District Court erred by only considering the interest of the Mazda dealer members. This Court should consider the interest of all of the members of New Jersey Car. And why? What reason does a Ford dealer or a Chevy dealer or a Honda dealer have to insert itself between a Mazda franchisee and Mazda as the franchisor and say, hey, you guys can't do that? All dealers in the state of New Jersey have an interest in fair competition and in general compliance with New Jersey law. Assume for the sake of discussion that every one of the 16 Mazda dealers in the state of New Jersey really, really loved this program and wanted to do it. So there was no question about that. Would your position still be that all the rest of the dealers in New Jersey would have a right to say, hey, they can't do that? Who cares whether the manufacturer and every franchisee likes it? They can't do that. We don't like it. That would remain our position, Your Honor, because those interests aren't eradicated simply because a majority, the entirety, a minority of the Mazda dealer members like or dislike the program put together by their manufacturer. They could be the next dealers subject to a program from their respective manufacturers that infringes upon the same rights and protections that the Mazda Brand Experience Program infringes upon. Well, and in that instance, wouldn't the Dealers Association be able to do what they've done here and come in and say, look, we've got people who don't like it, and no one will stand up for them except us. But your position is that brands cannot agree with their own franchisees, even if every franchisee likes it, and that the people to vindicate that right are you, the New Jersey Coalition of Automotive Retailers, right? Well, if Mazda reaches voluntary agreements with their dealers that do not infringe upon their rights and protections under the Franchise Practices Act, I think that's a different situation than what we have here, where Mazda unilaterally implemented the Brand Experience Program. This isn't an agreement with its dealers. Well, of the Mazda individual dealers, can't they opt in or out? They don't have to do this if they can just opt in and get a bigger discount, right? No, all of the dealers are subject to the program, and some of the dealers would have to take extraordinary efforts in order to comply, and that is exactly what the Franchise Practices Act disallows and prohibits. But by not complying, they're just not afforded the discount, correct? Correct. They are denied benefits from Mazda based on, in some circumstances, their inability to comply with the criteria set forth in the Brand Experience Program. Counselor, this is Judge Greenberg. Is it really necessary to go beyond the Mazda dealers? Because if you had a group of people who were getting a fairly minor advantage, and then you had super dealers who were getting a big advantage, but even the people who were getting a minor advantage, at least some of them supported this lawsuit, because they were ready to give that up if the whole thing was outlawed. We submit that all of the dealer's, all of the member's interest should be considered, but even if this court were to consider only the interest of the Mazda dealer members, the courts are primarily concerned about whether there is vigorous advocacy on all sides of the dispute. So, EINF... Hold on there, because I don't want you to let go of your, we'll get to your even if in a minute. Sure. I really want to make sure that I'm following your legal, I understand the position you've taken, which seems to be like it's out on the far end of what you could say, which is it really doesn't matter what these people agree to. It doesn't matter, because all the rest of us that deal in cars in the state, we got an interest in what happens between those privately contracting parties. That's your position. And my question is, if the association derives its standing from the standing of its members, if this were an individual case and not an association case, could a Ford dealer go in and say, hey, wait a second, make those people stop? Could an individual Ford dealership do that? We submit that they could, Your Honor, because... What possible authority do you have that? What would, on traditional standing rules, how could they claim an injury? Well, they would have to demonstrate an injury in fact and hear the implementation of the Mazda brand experience program engenders unfair competition that causes them to suffer a commercial injury. That's what I'm asking. Now you're talking about the Mazda dealers. I'm asking you, if associational standing depends on the standing of its members, how can we look past the Mazda dealers themselves? Because no Ford dealer could possibly have standing. No Chevy dealer could possibly have standing. Isn't that right? Because they couldn't allege an injury in fact. Because no matter what happens between Mazda and its dealers, it's not touching Ford or Chevy or Honda or Kia or anybody else on an injury in fact basis for an individual dealership. Right? If a Ford or Chevy dealer loses sales as a result of an action taken by Mazda that is violative of the Franchise Practices Act and that engenders unfair competition, we would submit that that has caused them to suffer an injury in fact that would give them standing in their own right to pursue the lawsuit. Wow, that's remarkable. So you're saying it would be unfair competition for Mazda to price its product. Not an antitrust injury. We're not talking about something like that. Your argument is Mazda can't price its product with its own dealers because that might in some way make somebody prefer Mazda to a Ford so Ford would have an injury in fact and have standing to complain about that. That's the position you're advancing. Not exactly, Judge. Our position is that Mazda can't price its product in a way that violates the very remedial statute enacted to protect all of the dealers throughout the state of New Jersey. Yeah, we're not communicating. I know we're way past your time but I got to hold on to this because it's puzzling to me. You're trying to make the legal argument that if somebody else is violating the law in a way that doesn't have anything to do, it doesn't touch the other dealership at all. That is, you know, I may not like somebody who does cat juggling because I have an affinity for cats but does the fact that that's happening and, in fact, it might actually violate the laws against cruelty to animals, does that give me standing as an individual to haul that person into court? Traditional standing rules would say, well, no, that doesn't give you individual standing. It might offend you. It might bother you. You might be right that it's a violation of the law but you have no standing. Your assertion seems to be that every dealer in the state of New Jersey has an interest in what happens between Mazda and the Mazda dealers and, therefore, even if they don't suffer any gives them standing. That is the injury, in fact. That sounds like what you're arguing, is it? Yes, Judge, and even if the court were to disagree that those non-Mazda dealers have suffered an injury, in fact, NJCAR is only required to show that one of its members has suffered an injury, in fact, and with respect to the germaneness prong, all of the dealers' general shared interests are to be considered. Now we're getting to the point. So should we be looking at everybody or should we be looking at the Mazda dealers the way the district court did? Because it sounds like what you're saying is if you just look at the Mazda dealers the way the district court did, we still win. Is that right? That's correct, Judge. Yes. Okay, well, I burned a lot of your time so I'll give you a couple more minutes here to make the points you'd like to make and certainly to give Judge Restrepo and Judge Greenberg a chance to weigh in, too. So if I understand you correctly, you win either way. That's what you're telling Judge Jordan. If you take the entire playing field, you win, and if you just limit it to the Mazda dealers, you also win. Is that your position? That is our position, Your Honor. All right, thanks. As I understand this case looking at it, some of the dealers who got the lesser discounts still support this suit because they just think they'd be better off if nobody got any discount, even if they lost their lesser discount. Yes, Your Honor, that does appear to be the case. Well, if that's your position. You know, one of the things that I find interesting in the Hunt case is that they talk about the suit has to look at the interest it seeks to protect if they're germane to the organization's purpose. And it's funny because you'd think that, well, how could a suit be brought by an organization that wasn't germane to its purpose? Because why would it be bringing the suit if it didn't think it was germane to its purpose? And yet a court apparently could say, well, it's not germane to its purpose. But in this particular case, the plaintiff organization must have thought, although the didn't the district court take a too narrow view of who was injured by this scheme of NASDA? Because you could be getting the discount on a lesser basis but still be injured because you'd be better off if nobody got a discount, including the big winner or the little one. I mean, so isn't your argument, in a sense, not that complicated? That's exactly right, Your Honor. The germane-ness prong, the standard applied to that prong by the Supreme Court and this court has been undemanding. It's a modest but sensible standard. It's a low hurdle that does not require a narrow or a specific purpose to be met. And when you look at the Supreme Court's cases in Hunt, in Brock, for example, they devote a sentence or two to the analysis of the prong. I think the Brock court expressly stated that it paused only briefly to consider whether the prong had been met. It's not a high hurdle for a plaintiff association to get over. Okay. Well, thanks, Mr. Kluska. We'll have you back on rebuttal. You have three minutes for rebuttal and we'll invite Ms. El-Khoury to speak. There's some background noise there but if you'll speak up, Ms. El-Khoury, I hope we'll be able to hear you. Yes. Can you hear me, Judge? I can hear you. Yes. I just had an initial question. What firm are you with? Munger, Tolles, and Olsen. What's the firm again? Munger, Tolles, and Olsen. Okay. Okay. Please speak. Your Honor, and may it please the court, my name is Adele El-Khoury. I'm counsel for amicus curiae, the National Automobile Dealers Association. I want to step back and address Judge Jordan's question about whether it was correct for the district court to consider only 16 of NJCAR's 500 members. Whether each individual member of the association has standing is not the question that's at issue here. That is a question under prong one of Hunt. What is at issue is prong two. And the district court's decision to limit the scope of its inquiry is contrary both to this court's precedent and to a common sense understanding of how associations work. Well, you've got to stop there, Ms. El-Khoury, because you can't blow past prong one that easily. It is important to us to know whether when we are considering whether the association can appropriately represent the interest of the members in question, whether we're looking at 500 dealers or we're looking at 16 dealers. Would you not agree with that? Yes, I do agree with that, Your Honor. Okay. And so it matters whether we're just looking at the Mazda dealers or we're looking at everybody. You'd certainly agree with that? Yes. Okay. Then the question about how they draw their association of standing from their individual members, it seems like doesn't the issue of who would have standing to make this complaint in their own right give us some guidance as to how broadly we should be paying attention to whether – how broadly we should be viewing the complaint, the opening question Judge Restrepo had? Or is that your position that that's just irrelevant? If there were two Mazda dealers in the whole state and 498 other ones who had no business individually getting into the issue between Mazda and its franchisees, your position would still be look at all 500? Yes, respectfully, Your Honor, so two points on that. One is that in that situation that you're positing where there were only two Mazda members as opposed to many others, you know, the association – an association bylaws would consider it a different situation and we don't know what they would do in that situation in terms of approving the lawsuit. But in this case where you are looking at the association's decision to bring this lawsuit on behalf of all of its members because all of its members have an interest in the enforcement of the FPA, then you are looking at all 500 of them. And that's what's required under Prong 2 of the Hunt Test. So your position is if it was one dealer. Your position really is the position that it's one dealer in the whole state and that manufacturer and that dealer, they cannot agree on anything that you guys don't like using. If you, you being NJCAR here, putting you in the shoes of the NJCAR for a moment, if you didn't like it, you'd have standing. You'd have standing even though none of the other 499 would have individual stands. The association would have standing and come and say, hey, don't let those two agree to that. It doesn't affect us. We got no injury in fact, but don't let them agree to that because your position is you got to look at this as broadly as possible because the association wants the law enforced, period. Right? That's the position. Not exactly, Your Honor. So I do think the case that you're presenting would be a more difficult case. And what's important as you're saying for Prong 1 of Hunt is that at least one member of the association would have standing to sue according to this lawsuit. So in the case that you're positing, that one member, you know, I mean, it wouldn't be clear I guess if that one member had standing to sue. But, you know, I think the association would look at that one member differently whereas in this situation you have, you know, 16 but also the association considering all 500 members, you know, and... So Ms. El-Khoury, are you suggesting to us that the question of constitutional standing depends on how the bylaws of the association are framed and whether they think they've got an interest or not? It's up to them? So, Your Honor, under Prong 1 of Hunt, which is, you know, undisputably the Article 3, the constitutional inquiry into standing, no, that's not sufficient. You do have to do the full analysis as to whether at least one of the association's members would have standing to sue. So let me ask, could a Ford dealer bring a claim? A Ford dealer down the street bring a claim saying that this Mazda program violates the New Jersey statutes. It's not pricing the cars fairly and therefore I might lose market share. Is that how Ford would have standing? Your Honor, so I do think there would be an argument that Ford would have standing. Again, you know, this does create inter-brand competition problems for the non-Mazda dealers and so I do think it hurts them financially and this Court has held that in bringing a for standing purposes, it's sufficient to allege that you're within the legally protected interest that the statute is designed to protect and that you would be financially insured. So I think there would be an argument, Your Honor, but I want to stress again that you don't have to reach that question here because it's under Prong 1. Do we not have to reach it because we can look at Mazda dealers only? No, Your Honor. You don't have to reach it because whereas Prong 1 asks, you know, about the individual standing of an individual member, Prong 2 asks more broadly whether the organization's purpose is to remain to its lawsuit. And so, you know, this is the distinction that the Court made in Brock. Once you are past Prong 1, you're not doing a Rule 23 class action type analysis. You're looking more broadly at whether the organization is advancing interest of its members more broadly. Let me go back to Judge Jordan's question as I understand it and I have the same concern. What is the injury in fact to non-Mazda dealers? Well, Your Honor, again, I don't want to posit too much because I don't think you need to answer. I don't think that question is at issue here. But, you know, one potential injury in fact is that they are harmed by the price differentials that Mazda's program creates. And that's true as between Mazda dealers and non-Mazda dealers. There are also some dealers that may want to sell both hours and days. How has anybody else hurt themselves? That's the important question here, right? And please take it as a positive premise that we're not talking about an antitrust injury here. You've not pled, you've not tried to plead, nobody's suggested that there's anti-competitive effects interbrand, that there's unfair competition interbrand. So just take that off the table. And take it as a given just for the sake of this discussion that it might matter to us whether the district court is right about whether just the Mazda dealers or everybody else has an interest here that should be taken into account. I understand, I think, perfectly well your argument. What you want to say is, hey, as long as one member's got standing, then you're past that point. And then the only question is, can they adequately argue for this? But just, you know, humor us for a second. Assume we thought it was important to know whether we had to look just to the interests of the Mazda dealers or to everybody's. What would we be guided by in deciding whether to look more broadly than just the Mazda dealers? So what you would be guided by would be whether the members have an overarching common interest in the enforcement of this statute and in, you know, stopping coercive franchisor practices. And that's actually, that's exactly what the Supreme Court and this court have said over and over again is what you are looking to when you are looking to the membership. And that's because it's a perfectly common sense approach to associational standing. You know, every association is going to contain multiple subgroups or constituencies that have varying interests. But all of them have decided that they have sufficient interests in common that they want to join this association. And so courts have recognized, this court, the Supreme Court, other circuits, that there's always going to be some conflict. But what's guiding you in deciding whether to consider the 16 or the 500 is what is their common overarching interest. And, you know, that's... Isn't part of it, isn't part of that question? Indeed. What is their common overriding interest? Don't you have to ask the question. Assume for the sake of discussion that every one of the 16 Mazda members, every single one of them loved this program and wanted to do it. Then your interest would be in conflict with the people who are involved, right? How could you say we're representing the interests of this association generally if the only people who had individual stands, the Mazda dealers, all said, we like it, we want it. So, Your Honor, this is why the court asks whether the association has followed its own bylaws in following the suit. Okay, so we're back to your argument that it's up to the bylaws of the association. Because it doesn't matter, it wouldn't matter whether every single person who had individual standing wanted this. Your position is it's up to the association. We can argue in conflict. We can argue directly against the interests of the only parties who would have individual standing if we think it's in the interests of the rest of us. That's the legal position you've got. Well, not exactly, Your Honor. So, just to clarify, what I was saying about the association's bylaws is that it would be a different case, the one you're asking about. And what you're looking to when you're looking at the bylaws is whether, you know, there is some reason to think that the association has clearly gone awry going contrary to the interests of its members. And so, it may be that in your hypothetical, if the 16 Mazda dealers really wanted this lawsuit and were openly in conflict, and NCAR comes in and says, too bad, we're suing anyway, there would be reason for doubt, for the court to doubt that the association had followed its bylaws and that it was actually representing the interests of its members. Whereas, that's not the case here. There is no reason to doubt that. Well, when you say there is no reason to doubt it, we'll get to that with Ms. Ellsworth in a minute. But by their account, 11 of the 16 do like it. 11 of the 16 like it, 5 don't. But now we're asking questions about what do the Mazda dealers like or not like. And that's kind of the question we started with. What's the group we're looking at and what meaning does that have in the way we look at the complaint? But I think we've got your position on this. Judge Restrepo or Judge Greenberg, is there something else you want to ask Ms. El-Khoury? No. Okay. Ms. Ellsworth. Good morning, your honors. May it please the court, Jessica Ellsworth for Mazda Motor of America. NJCAR and its amicus have made most of their arguments to you this morning about non-Mazda dealer members and whether they should be included. But I think it's important to take a step back and look at the fact that NJCAR defended its standing to bring this lawsuit solely on behalf of the Mazda subset of its membership. And you can see that starting in the complaint at paragraph 31 where they identified the actual controversy as one between Mazda and the New Jersey Mazda dealers. And then on page 6 of its motion to dismiss opposition brief, NJCAR said that, quote, in this case, it appears as a plaintiff on behalf of its Mazda dealer members. Okay. No, go ahead. If you've got some more examples like that, lay them out. I do. Just a couple, your honor. On page 18, NJCAR said that it has standing to prosecute the controversy before the court, quote, as a representative of its Mazda dealer members in New Jersey, end quote. And you can see in the district court's opinion on page 14 at note 7, footnote 7, the district court explained that it was focusing on the Mazda dealer members because NJCAR had limited its defense of associational standing to those members. Okay. Let's take it as a given for just our discussion that we thought, yeah, that's right, we're looking at the Mazda dealers. They've come forward and they've got affidavits from several Mazda dealers that say, yeah, we don't like this. This is bad and it's contrary to the law. So why doesn't that fact that they've got some Mazda dealers who are saying that give the association exactly the standing it needs to bring this case so that some court can look at the merits of the question? Some court can actually dig into this and say, you know, that does violate the New Jersey law. Your honor, I think the answer to that question turns on the fact that Mazda made a factual challenge to NJCAR's standing. And so the district court had to make a finding of fact on what the evidentiary record showed. As you noted, NJCAR submitted two declarations from Mazda dealers who had not enrolled that said they didn't like the program. And Mazda submitted a declaration from Mazda showing that 11 of the New Jersey dealers had enrolled 70% and it submitted five declarations from enrolled dealers explaining how they had made up front investments, how they would lose them, if NJCAR pursued a litigation, et cetera. Did that mean that those dealers wouldn't have been better off if there was no program even though they were getting something from the program? Because then there wouldn't be super dealers who were in the excellent position of getting the maximum benefit. In other words, you can get a smaller benefit and say, well, I don't want the smaller benefit. I'd rather there not be a program at all rather than having to deal and compete with the super dealers who get the biggest discounts. Well, Your Honor, the district court looked at the evidentiary record and it made a factual finding that the 11 Mazda dealers who had enrolled had a, quote, legitimate and cognizable interest in the continuation of the program. That's true, they do, but they might be better off if it wasn't continued. They do have an interest in the continuation of the program. They're getting some discounts, but maybe they're better off if there's no program. Well, Your Honor, I think if you look at the declarations that were submitted, and you can find these in the appendix, I'll just quote you from one of them. And this is a declaration that's at page A132. The declaration from the owner of Mazda of Lodi, paragraph 9, states, quote, I believe that the action is contrary to the interest of my dealership and I cannot support it. If the program is declared unlawful. You've got one dealer who feels that way, and you showed up with a few other, like, four other affidavits. I know you want to leverage those other seven and claim that you got 11, but that's not really speaking to Judge Greenberg's point, which is, yeah, it may be that there's some benefit to the people who qualify for some kind of a discount. But if there weren't an uneven bargaining power in the mix, it might be that every one of them would say, I was happy the way things were, but if you're going to have discounts and I have to invest millions of dollars to change my showroom around and do this, that, and the other thing, I guess I'll do it because you're making me do it. And I'll hope I make up the difference later, but I'm not really delighted about it. Right? That's the point. You might be giving them a benefit, but they might be better off without the benefit. And the law, the policymakers in New Jersey seem to think they might be better without the benefit because they pass laws that seem to indicate maybe you shouldn't be doing this. So that, you know, not to put words in Judge Greenberg's mouth, but why don't you answer that question that I think he's putting to you, which is the mere fact that you could come up with a few dealers who say, well, I'm doing okay with this, let's keep it, doesn't really answer the question of whether everybody's better off if Mazda isn't permitted to do this. Judge Jordan, I'm happy to try to address that. It was NJCAR's burden to prove standing. So let me start with that fact. So what did NJCAR submit from anyone who had enrolled in this program saying that they didn't like it? The answer is nothing. Well, did they come forward with some affidavits? They did. Two affidavits from dealers who had not enrolled. So not from any of the 11. Isn't that more than nothing? Isn't two Mazda dealers coming forward and saying, this is bad for us, we don't want it, that's why we're not enrolling, it's not good for us, we don't like it. Isn't that something? Yes. And when I said that they came forward with nothing, what I, just to be clear, they came forward with nothing from anyone who had enrolled that said, yes, we enrolled, but we'd really be better off without it. They came forward with something from two of the five dealerships that had not enrolled. And those declarations, when you look at them, give very idiosyncratic reasons for not enrolling. It is about past renovations that one of them had made and the upfront cost that the other one didn't feel comfortable making at this point in time. But NJCAR didn't submit anything. And this is, the district court went out of its way to point this out in its decision that NJCAR had not rebutted Mazda's declaration or the declarations from the enrolled dealers. The district court had nothing that would support NJCAR having met its burden to show that any of the enrolled dealers were supportive of this litigation. Well, you got to stop limiting yourself to the enrolled dealers, right? Again, take the given that we might think, you know, enrolled or not enrolled is really not meaningful. What's meaningful is, are they a franchisee? And unenrolled members are also franchisees, right? Certainly are. Okay. So if we took seriously the interests of the non-enrolled members, why isn't their standing because they've come forward with at least two Mazda franchisees who can and maybe would be in a position to allege an injury in fact. I'm not getting the business I would otherwise get because you're making the Mazda dealer in the next town over a better deal than you're making me. And just because I can't afford to do all the stuff you want doesn't mean you should be allowed to do that under the New Jersey law. Assume we thought that that was an accurate way for somebody to position themselves to get standing individually. Why isn't that enough for the association to be able to come in and say, hey, we've got standing because they've got standing. And it's for the very kind of case like this that associations exist, so the people who can't stand up to the big money of the manufacturers can stand up through us. What's wrong with that reasoning to get us to the merits and past standing? Your Honor, this court has repeatedly said in a series of decisions that when an association takes a litigation position that is contrary to the interests of a majority of its members, the association is not serving its larger purpose and it lacks standing. For us to understand why the association would bring the suit if it didn't think that the general view of the Mazda dealers was that this program is unlawful. Why would they bring the suit? What motive would they have? Judge Greenberg, as they told, I believe, you and Judge Jordan, N.J. Carr's view is that it can bring this lawsuit even if every Mazda dealer in the state of New Jersey loves it. I understand that, but the question is why would they? I mean, why would you bring a suit if the people directly involved liked what you were doing and they didn't favor the lawsuit? Why would you do that? Well, Your Honor, there may be some other reason that N.J. Carr wants to pursue this lawsuit or wants to pursue it against Mazda, but the fact remains that there are 16 Mazda dealers. The district court made a finding that was based on unrebutted evidence that 11 of those 16 were not in favor of and would be hurt by the lawsuit, and that runs headlong into the lawsuit. But they said hurt by the lawsuit. They were hurt because they were going to lose their discounts, but they might have been better off, even though they were hurt by losing it, that overall they would have been better off if there was no program. Well, Your Honor, there was no – that's why I think why the district court focused on this being unrebutted. You would have a different case if N.J. Carr had built a different record that had provided exactly that sort of information. And in the hospital counsel case, there was – there's a line in there where the court says, we have no basis for concluding that the members who entered into agreements do not want the relief sought. What's really important to understand is that hospital counsel was not a factual challenge. They were just looking at what was in the complaint. Our case is a factual challenge, and that's why the district court had to weigh the record that N.J. Carr made. This case is really, I think, a very simple one when you focus on what the record was, because N.J. Carr didn't build a record about any non-MASDA dealer, not a single one, and it didn't build any record about any of the 11 who had enrolled. Your case really comes down to this. Hey, there's only two people out there that don't like it. They're kind of – you know, you'd be more polite than this, but they're kind of whiners and don't matter because they never enrolled. So because most of the MASDA dealers like it, that's good enough. The fact that some don't like it, that is immaterial. It's actually the equivalent of nothing, as you put it. What matters is that there's a factual finding that most of the MASDA dealers have something to gain. And we've got affidavits from five of them who indicate they really like it. Ergo, the ones who don't like it, that's of no moment, right? I think it's the fact that the ones who don't like it are, on this record, a significant minority. Because the way germaneness has come into play through this court and other courts' decisions is that the primary purpose of an association is ultimately to vindicate shared interests of its members. And when you have a conflict of interest like this, where you have a finding that 70% of the affected members stand to be hurt if this litigation were to be successful, then this isn't something that is seeking to indicate shared interests of the MASDA dealer members. Isn't the shared interest that they're pressing on us and which you're sort of arguing against, I guess, that there is a franchisees are in a weaker bargaining position? That's just the nature of the relationship between the manufacturer and the dealer. And that as a matter of public policy, New Jersey has said, well, we don't want that exercised in a way that's to the disadvantage of the dealers because they can't really stand up. So if you've got two that are standing up, doesn't that sort of play exactly into what the associations are saying, which is, you know, we've got two brave souls ready to stand against a thwart the power of MASDA. I mean, they seem to be arguing to us that that's the significant thing, that there is somebody willing to stand up. If the association standing depends on individual standing and you've got two people with individual standing, why isn't Ms. Elkor and Mr. Kleska right that now we're past prong one of hunt and we're looking at prong two and the only question becomes, can they vigorously defend? And, hey, we are vigorously defending. Your Honor, I think prong one, you're right, looks at individual members. Prong two, though, which flows from the same constitutional case or controversial constitutional requirement, asks about germaneness. And germaneness asks about, this is where this court has put conflicts of interest, that when you have a serious conflict of interest, and I don't read N.J. Carr or the amicus brief to be contesting the notion that a serious conflict of interest defeats associational standing in this court on prong two. They just want to argue about whether there is a serious conflict here. Right. I take them to be saying, right, precisely, I take them to be saying, there is no conflict in the sense that we can and do speak for those dealers who don't want this, so we're right in line with them. We are lining up exactly with the dealers who don't want this. And that's what the association is for. That's the very purpose for it to exist is to have a gathering of strength to meet the strength of the manufacturer. So if we're in prong two, why isn't that a perfectly sound argument? Because, Your Honor, the shared interests of the Mazda dealers here are not the interests of the two members who chose not to enroll. There is a conflict. That makes this more like the Contractors Association case. In Contractors Association, the facts showed there were 535 members and there were 29 who could be hurt if the litigation proceeded, roughly 5%. And what this court said is when you have 95% of the members who stand to be helped and only 5% who stand to be hurt, that is not a serious enough conflict to defeat associational standing. Here we have the inverse. We have 70% who stand to be hurt under the district court's finding of fact, which they've identified no basis in the record to show is a clear error. And you have, at most, 30% who stand to be helped. And that's if you assume that the two declarations could be essentially extrapolated out to all five dealers who didn't enroll. So we're in a situation. I got you, Ms. Ellsworth. We've gone way past the 15 minutes here. I think we understand the position. But I should ask Judge Restrepo. I don't have any questions. Nothing else. Okay. Then we'll kick this back to Mr. Kluska. You have three minutes for rebuttal, sir. Thank you, Your Honor. Programs like the MBEP place dealers in very, very difficult positions. The realities of the situation is that dealers are hesitant to come forward for a variety of reasons. That's exactly why they join organizations such as NJCAR to advocate on behalf of their interests. And that's exactly why. We understand that. And I think the most helpful thing for you to use your time for, if you would, is to meet the argument that Ms. Ellsworth has made, that there's a factual record here. You had an obligation to make a record to sustain your factual challenge, and you haven't done it. Can you go with that, please? NJCAR submitted two affidavits from two dealers who were willing to come forward to express the fact that they would be harmed and were being harmed by the implementation of the MBEP. Under the first prong of the Hunt test, NJCAR was only required to show that one of its members suffered an injury, in fact, and they found two dealers who were willing to come forward to speak towards the injury, in fact, they were suffering as a result of the MBEP. That was not challenged by MAFTA. With respect to the second prong, I think it's pretty clear that all dealers have a shared interest in fair competition and in the protections provided by the very statute that was enacted to protect them in their dealings with franchisors who have an unlevel bargaining power when dealing with them. So are you suggesting there's no conflict of interest amongst the MAFTA dealers? There is certainly a conflict of interest among the 16 MAFTA dealers. I think that is certainly accurate. But there is no dispute that all of the dealers have a shared interest in fair competition, promotion of their rights under the FTA, and compliance with New Jersey law that provides them with protections against their respective franchisors. And your honors had asked what the court would be guided by to determine which members should be considered. I would point the court to Hunt, where in the complaint at Hunt, the association alleged that only some of the dealers had suffered injuries as a result of the enactment of the statute in North Carolina, but the court considered the entire industry's right to publicize its grading system and whether that interest was germane to the organization's purpose to determine whether the germaneness prong had been satisfied. Okay. All right. I think we've got... I don't have any questions. Thanks. Judge Restrepo, are you good? I'm fine, thanks. All right. Well, counsel, thank you very much. We appreciate everybody coming on by phone. We know this is kind of an awkward way to try to handle this. We're grateful for your time and service to your clients today, and we'll go ahead and wrap this up and take the matter under advisement. As counsel in this case exits, we'll keep the court on for the next case. Thank you, counsel.